UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| Ricky Wilkinson, | : | |
|     Petitioner, | : | |
| | : | |
| v. | : | No. 1:06-CV-234 |
| | : | |
| Rob Hoffman, Commissioner, Vermont | : | |
| Department of Corrections, | : | |
|     Respondant. | : | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Paper 4)

Petitioner Ricky Wilkinson has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Wilkinson contends that his constitutional rights were violated during his state court trial which resulted in his aggravated assault conviction.  Out-of-court statements by Wilkinson's stepson Tom, the victim, were introduced as evidence against him but the trial court did not allow Wilkinson to call Tom as a witness.  Tom was barred from testifying because he had a perjury conviction and Vermont law at the time did not allow convicted perjurers to testify.  Vt. Stat. Ann. tit.13, § 2907 (1947)(repealed 2006).  Wilkinson's conviction was upheld by the Vermont

Supreme Court, <u>State v. Wilkinson</u>, 178 Vt. 174 (2005), and he now seeks post-conviction relief in federal court. Wilkinson argues that the introduction of Tom's out of court statments violated the Confrontation Clause and his right to present a defense under the Sixth Amendment.  For the reasons set forth below, I recommend that Wilkinson's petition be GRANTED.

I.  Factual Background

On February 11, 2003, Wilkinson was convicted of first-degree aggravated domestic assault for threatening to kill his stepson, Tom, while pointing a gun at him.  <u>Wilkinson</u>, 178 Vt. at 175.  He was sentenced to 10-15 years in prison. The Vermont Supreme Court summarized the facts of the case as follows:

> The charge arose from events that took place at defendant's home while he was intoxicated. Defendant and his wife had an argument that escalated to the point where defendant threatened to kill the family dog. Someone present in the home at the time called the police, and defendant fled. The police arrived and eventually took defendant's wife to the police station so that she could give a statement. When the wife returned home, she saw Tom and a friend outside. The friend warned her that defendant had a gun. At some point, Tom and defendant's daughter went inside the home and found defendant with a gun, yelling, "[s]omebody's going to die today." Defendant pointed the gun at Tom. The police were summoned again and arrived shortly thereafter.

<u>Id.</u>

On the morning before Wilkinson's trial the defense learned for the first time that the prosecution would not call Tom as a witness. Instead, the prosecution intended to introduce Tom's out-of-court statements about the incident. Tom made the statements to Wilkinson's cousin shortly after the incident. <u>Id.</u> at 175-76. Tom told the cousin that: "(1) he was afraid; (2) defendant had pulled a gun on him; (3) he had never been so scared in his whole life; and (4) he thought defendant was going to kill him." <u>Id.</u> at 176. The trial court allowed these statements into evidence as excited utterances. <u>Id.</u>

Faced with the admission of Tom's out-of-court statements, Wilkinson requested to call Tom as a witness and cross-examine him. The prosecution raised the issue of Tom's preclusion under 13 V.S.A. § 2907, which provides that "[t]he oath of a person convicted of perjury ... shall not be received in a proceeding in court." Tom had been previously convicted of perjury and therefore his testimony would be barred by the plain language of the statute. The prosecution declined to waive the testimonial bar, noting that it was unclear whether it could be waived. The court

3

therefore did not allow Wilkinson to call Tom as a witness. Wilkinson's cousin testified to Tom's statements.

Arguing that his constitutional rights to confront his accuser and to present defense evidence were violated by not allowing him to call Tom as a witness, Wilkinson appealed his conviction to the Vermont Supreme Court, which affirmed the conviction.

II. Discussion

The Court may grant a writ of habeas corpus if the state courts unreasonably applied clearly established federal law. 28 U.S.C. § 2254(d)(1).  Wilkinson argues that the state courts unreasonably applied the Sixth and Fourteenth Amendments of the United States Constitution by not allowing him to cross-examine Tom.

  A. Confrontation Clause

Wilkinson argues that admitting Tom's out-of-court statements, without the opportunity to cross-examine, violated the Confrontation Clause.  He relies on the Supreme Court's holdings in Crawford v. Washington, 541 U.S. 36 (2004) and Davis v. Washington, 547 U.S. 813 (2006).  The state responds that Tom's statements were not testimonial and therefore there was no Confrontation Clause violation.

4

Further, the state argues that <u>Crawford</u> is not to be applied retroactively and therefore cannot be applied to this case.

1. Retroactivity

<u>Crawford</u> was issued on March 8, 2004, after Wilkinson was sentenced but prior to the Vermont Supreme Court's decision.  The Vermont Supreme Court applied <u>Crawford</u> in its opinion and found the statement to be non-testimonial.  In <u>Davis</u> the United States Supreme Court clarified the meaning of "testimonial".  <u>Davis</u> distinguished between statements about "what is happening", which are nontestimonial in nature, and statements about "what happened", which are testimonial in nature.  527 U.S. at 830.

The Supreme Court in <u>Whorton v. Bockting</u> held that <u>Crawford</u> announced a "new rule" of constitutional law that is not to be applied retroactively.  127 S. Ct. 1173, 1180-81 (2007).  Therefore, <u>Crawford</u> is only applicable to cases on direct review.  <u>Whorton</u>, 127 S. Ct. at 1180 (citing <u>Griffith v. Kentucky</u>, 479 U.S. 314 (1987)).  However, <u>Crawford</u> was decided while this case was on direct appeal to the Vermont Supreme Court and therefore <u>Crawford</u> was properly applied.

However, <u>Davis</u> was decided after the Vermont Supreme

5

Court upheld the conviction.   Therefore, the retroactivity rule of Whorton does not apply here.

Habeas relief may not be granted based on law that was not clearly established at the time that the conviction became final.   See 28 U.S.C. § 2254(d)(1).   While Tom's statements could possibly be seen as testimonial under Davis, Davis was not clearly established law when Wilkinson's conviction became final.   Therefore, the court must review the decision using Crawford but not Davis.

2. Crawford

The Vermont Supreme Court, applying Crawford, found that Tom's statements to his cousin were not testimonial and therefore there was no Confrontation Clause violation. Wilkinson, 178 Vt. at ¶ 7.

In Crawford, the Supreme Court explicitly declined to comprehensively define "testimonial" statements.   541 U.S. at 68.   The Court did give examples of what would clearly be considered testimonial:   formal, out of court statements to government officials; ex parte examinations; affidavits; depositions; prior testimony; confessions; and statements made under circumstances which would lead an objective

6

witness reasonably to believe that the statement would be available for use at a later trial. Id. at 51-52.

The Vermont Supreme Court distinguished Tom's statements from the examples given in Crawford. Wilkinson, 178 Vt. at 178. The court noted that the statements were not given to the police, in the presences of the police, or in the course of a police investigation; were given to someone with no relationship to the prosecution; were not given under oath; were not part of the adversarial process; were not made in a structured environment; no one was examining Tom for the purpose of collecting information; and Tom was in an excited state. Id.

Without the benefit of the Davis decision to clarify the meaning of "testimonial", the Vermont Supreme Court applied Crawford reasonably by relying on facts that distinguished Tom's statement from the examples given in Crawford. Therefore, habeas relief on Confrontation Clause grounds cannot be granted.

B. Right to present a defense

Wilkinson claims that his right to present a defense was violated when 13 V.S.A. § 2907 restricted him from calling Tom as a witness.

1. Exhaustion

State prisoners seeking federal habeas review ordinarily must first exhaust available state remedies.  See 28 U.S.C. § 2254(b) and (c); see also Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 190 (2d Cir. 1982).  The exhaustion requirement "springs primarily from considerations of comity" between the federal and state governments.  Daye, 696 F.2d at 191.  To meet the requirements of exhaustion, a petitioner must fairly present the claims he seeks review of to the highest state court available.  Id.

The State argues that Wilkinson has failed to exhaust his Confrontation Clause claim, but it has failed to raise the exhaustion issue in regard to his right to present a defense claim.  Wilkinson raised the issue with the Vermont Supreme Court and has therefore exhausted his state court remedies.  See Wilkinson, 178 Vt. at 179-80.

2. Procedural Default

The State argues that Wilkinson is procedurally barred from raising this issue because he did not raise the claim at trial and the Vermont Supreme Court only reviewed the issue for plain error.

8

When a state court ruling is based on adequate and independent state grounds, such as procedural default, habeas relief cannot be granted by a federal court unless the petitioner can show cause and prejudice or a fundamental miscarriage of justice.  See Coleman v. Thomson, 501 U.S. 722, 749-50 (1991); see also Roy v. Coxon, 907 F.2d 385, 389 (2d Cir. 1990)("When a state court has refused to reach the merits of the petitioner's claim on the ground that there was a procedural default under state law, the federal habeas court is generally barred from reaching the merits.").  Therefore, the Court must determine whether the grounds for rejecting Wilkinson's argument were both adequate and independent.

Because Wilkinson did not raise this issue at the state court level, the Vermont Supreme Court only reviewed his claim for "plain error".  Wilkinson, 178 Vt. at 179-80.  "Plain error exists only in exceptional circumstances where a failure to recognize the error would result in a miscarriage of justice, or where the error is so grave and serious that it strikes at the very heart of the defendant's constitutional rights."  Id. at 179.  The Second Circuit has held that "plain error" review is an "adequate" state ground

for procedural bar purposes.  <u>Roy</u>, 907 F.2d at 389-90.

However, the issue of whether "plain error" review is

"independent" must be decided on a case by case basis.  <u>Id.</u>

at 390-91.

If the state ground for not barring the petitioner's

claim is not independent of federal law, the procedural bar

does not apply.  <u>Id.</u>  The Supreme Court in <u>Ake v. Oklahoma</u>,

stated:

> "[W]here the non-Federal ground is so interwoven
> with the other as not to be an independent matter,
> or is not of sufficient breadth to sustain the
> judgment without any decision of the other, our
> jurisdiction is plain".... In such a case, the
> federal-law holding is integral to the state court's
> disposition of the matter.... In this case, the
> additional holding of the state court – that the
> constitutional challenge presented here was waived
> – depends on the court's federal-law ruling and
> consequently does not present an independent state
> ground for the decision rendered.

<u>Ake v. Oklahoma</u>, 470 U.S. 68, 75 (1985); <u>see also</u> <u>Michigan</u>

<u>v. Long</u>, 463 U.S. 1032, 1042 (1983) (state ground not

independent "when it fairly appears that the state court

rested its decision primarily on federal law").

In <u>Roy v. Coxon</u>, the Second Circuit analyzed the Vermont

Supreme Court's "plain error" review of a due process

challenge to jury instructions to determine whether it was

independent.  907 F.2d at 389-391.  The court noted that

10

when a state waiver rule required an analysis of federal law, it is not sufficiently independent to bar a federal court from reaching the merits of the claim.  <u>Id.</u> at 391. The court observed that the state court opinion in its "plain error" review primarily cited United States Supreme Court precedent to interpret the requirements of due process.  <u>Id.</u>  Therefore, because the state court's plain error analysis relied on federal precedent, it was not independent and not procedurally barred.  <u>Id.</u>

Here, the Vermont Supreme Court's plain error review consisted entirely of analyzing Wilkinson's claim under <u>Washington v. Texas</u>, 388 U.S. 14 (1967).  <u>Wilkinson</u>, 178 Vt. at 179-80.  Displaying even less independence than was present in <u>Roy</u>, the court cited only United States Supreme Court precedent and cited no state law.  <u>Id.</u>  Because federal precedent was the sole basis for holding that there was no plain error, it was not independent of federal law and therefore the claim is not procedurally barred.

3. AEDPA review

Because Wilkinson exhausted his claim in state court and is not procedurally barred, the court must review the state court's decision under the standard set forth in the

11

Antiterrorism and Effective Death Penalty Act ("AEDPA"),
Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996).  Under
the AEDPA federal courts cannot grant habeas relief to a
person in state custody on the basis of incorrect
application of federal law unless the state court
adjudication "resulted in a decision that was contrary to,
or involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme Court
of the United States."  28 U.S.C. § 2254(d)(1).

    "In determining whether a right is clearly established
under federal law as determined by the Supreme Court, we
note that although the Supreme Court must have acknowledged
the right, it need not have considered the exact incarnation
of that right or approved the specific theory in order for
the underlying right to be clearly established."  Ryan v.
Miller, 303 F.3d 231, 248 (2d Cir. 2002).  Federal habeas
courts should apply the rationale of a federal rule to the
facts but not so far as to extend a federal rule beyond what
is clearly established.  Yarborough v. Alvarado, 541 U.S.
652, 666 (2004).  However, "the difference between applying
a rule and extending it is not always clear."  Id.  "Certain
principles are fundamental enough that when new factual

12

permutations arise, the necessity to apply the earlier rule will be beyond doubt." Id.

Under the "unreasonable application" standard, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Williams v. Taylor, 529 U.S. 362, 412-13 (2000). "In other words, a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" Wiggins v. Smith, 539 U.S. 510, 520 (2003)(citing Lockyer v. Andrade, 538 U.S. 63, 76(2003)).

Wilkinson claims that the state court applied federal law incorrectly in rejecting his right to present a defense argument. The clearly established law relevant to this case is contained in Washington. The issue is therefore, whether the Vermont Supreme Court misapplied the governing legal principle of Washington by upholding Wilkinson's conviction.

   a. Washington v. Texas

Addressing the right to present a defense, Washington held unconstitutional the application of a Texas law

13

prohibiting defendants from calling persons who are charged
or convicted as coparticipants to testify. <u>Washington</u>, 388
U.S. at 23.  At his murder trial Washington testified that
his alleged coparticipant, Fuller, had shot the victim and
the defendant had tried to stop him. <u>Id.</u> at 16.  Washington
offered Fuller's testimony for corroboration. <u>Id.</u>  The
Texas court did not allow Washington to call Fuller because
state law provided that "persons charged or convicted as
coparticipants in the same crime could not testify for one
another." <u>Id.</u>  Because Washington was not allowed to
produce the testimony of Fuller at trial, he claimed that
his right to present a defense under the Sixth Amendment was
violated. <u>Id.</u> at 17-18.  As the Court put it, "[t]he right
to offer the testimony of witnesses, and to compel their
attendance, if necessary, is in plain terms the right to
present a defense, the right to present the defendant's
version of the facts as well as the prosecution's to the
jury so it may decide where the truth lies." <u>Id.</u> at 19.

The Court began its analysis by discussing the "common-
law context in which the Sixth Amendment was adopted." <u>Id.</u>
at 19-21.  The Court went through a number of common-law
rules which disqualified witnesses and noted how these rules

were based on the premise that "the right to present witnesses was subordinate to the court's interest in preventing perjury, and that erroneous decisions were best avoided by preventing the jury from hearing any testimony that might be perjured, even if it were the only testimony available on a crucial issue."  Id. at 21.  The federal courts had followed the common law rule that disqualified accused accomplices from testifying until the Supreme Court overruled existing common-law noting that,

> "the truth is more likely to be arrived at by
> hearing the testimony of all persons of competent
> understanding who may seem to have knowledge of the
> facts involved in a case, leaving the credit and
> weight of such testimony to be determined by the
> jury or by the court"

Rosen v. United States, 245 U.S. 467, 471 (1918).

While Rosen was decided on nonconstitutional grounds, Washington held that its reasoning was required by the Sixth Amendment.  Washington, 388 U.S. at 22.  Upon analyzing the history and purpose of the Sixth Amendment, the Court held that "arbitrary rules that prevent whole categories of defense witnesses from testifying on the basis of a priori categories that presume them unworthy of belief" violate the Constitution.  Id.  The Court then explained how the absurdity and arbitrariness of the Texas rule violated the

15

petitioner's right to present a defense.  _Id._ at 22-23.  The
Texas rule allowed the prosecution to call a witness to
testify, but restricted the defense from calling the same
witness.  _Id._  Also, an accused coparticipant was not
disqualified if he were acquitted at his own trial.  _Id._
The Court noted that both of these exceptions to the
disqualification rule involved circumstances where the
accomplice would have more reason to commit perjury – to
shift blame away from himself – than in other circumstances.
_Id._  Common sense spoke to the backwards logic and arbitrary
nature of the rule.  _Id._  The Court held that the rule
arbitrarily denied the petitioner the right "to put on the
stand a witness who was physically and mentally capable of
testifying to events that he had personally observed, and
whose testimony would have been relevant and material to the
defense."  _Id._ at 23.

    b. Vermont Supreme Court's Holding

    The Vermont Supreme Court began its analysis of
Wilkinson's right to present a defense claim by citing
_Washington_, for the proposition that, "[t]he Sixth Amendment
right to present a defense includes the right of the
defendant to offer the testimony of witnesses, to compel

their attendance, and to present the defendant's version of the facts." <u>Wilkinson</u>, 178 Vt. at 179.  The court then briefly summarized <u>Washington</u> and distinguished it based on the dual applicability of § 2907, noting that § 2907 disqualifies witnesses for both the defense and prosecution.[1]  <u>Id.</u> at 179-80.

    c. Wilkinson's Rights

The Vermont Supreme Court's exploration of the rationale of § 2907 went only skin deep.  When the application of § 2907 is looked at in the context of this case, its arbitrary nature becomes clear and undisputable.

In determining whether the law is arbitrary, we begin by looking at the rationale behind the law.  The only reason for excluding convicted perjurers is to prevent repeated perjury and protect the jury from hearing the testimony of a person the legislature deemed to be untruthful.  This is the same rationale behind the Texas statute in <u>Washington</u>.  Here, just as in <u>Washington</u>, the statute's purpose is undermined by its application.  Wilkinson sought to have Tom

---

[1] This distinction is based on Justice Harlan's concurrence in <u>Washington</u>, which implied that disqualifying rules that applied "across-the-board" are not arbitrary because they are based on "general experience with a particular class of persons".  <u>Wilkinson</u>, 178 Vt. at 180 (citing <u>Washington</u>, 388 U.S. at 24 (Harlan, J., concurring)).

testify for the purpose of showing him to be untruthful, but was barred from doing so because Tom was deemed to be untruthful.  The statements of a person the state deemed too untrustworthy to testify were presented to the jury, and Wilkinson could not cross-examine Tom to show that he was untrustworthy.  The backwards logic of § 2907, when applied to a defendant's accuser, shows it to be arbitrary. Therefore, because Wilkinson was arbitrarily denied the right to present a relevant witness, his right to present a defense was violated and the state court misapplied the governing legal principle of <u>Washington</u>.

   4. Harmless Error

   To grant relief under § 2254, the prejudicial impact of a constitutional error must have had a "substantial and injurious effect" on the jury's verdict.  <u>Fry v. Pliler</u>, 127 S. Ct. 2321, 2328 (2007) (citing <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993)).  Petitioners are not entitled to relief based on trial error "unless they can establish that it resulted in "actual prejudice."  <u>Brecht</u>, 570 U.S. 637.  The court must review the record "as a whole" to determine whether the error was harmless.  <u>Id.</u> at 638.  When cross-examination has been improperly curtailed, the court must

inquire "whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless...." Henry v. Speckard, 22 F.3d 1209, 1215 (2d Cir. 1994) (citing Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)).  In doing so the court should assess "the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and ... the overall strength of the prosecution's case."  Benn v. Greiner, 402 F.3d 100, 105-06 (2d Cir. 2005) (citing Cotto v. Herbert, 331 F.3d 217, 254 (2d Cir. 2003)).

To analyze these factors we must look to the evidence at trial relating to the incident.  Four people witnessed the incident; Wilkinson, Tom, Tom's sister Brittany, and Tom's friend Billy.  Wilkinson chose not to testify; Tom was not allowed to testify; both Brittany and Billy testified.

a. Brittany's Testimony

Brittany testified that during the incident Wilkinson was arguing with Tom and grabbed a gun from the wall.

19

(Trial Tr. 175, Feb 10, 2008). Wilkinson was waiving the
gun around yelling statements to the effect of "somebody's
going to die." Id. at 176. Wilkinson then went looking for
bullets. Id. at 177. When Wilkinson found the bullets he
repeatedly picked them up but they were slapped out of his
hand by Billy. Id. at 195. Brittany was unsure of whether
he ever loaded bullets into the gun and never saw whether
the gun was actually pointed at Tom. Id. at 195-97.
Brittany also never heard Wilkinson specifically threaten
Tom. Id. at 208.

   b. Billy's Testimony

   Billy testified that Wilkinson was yelling and grabbed a
gun off the wall. Id. at 221. However, Billy testified
that Tom tried to keep the bullets away from Wilkinson and
he was unsure if Wilkinson ever got the bullets. Id. Billy
stated that he had a better view and saw Wilkinson point the
gun at Tom's chest after saying "somebody's going to die
tonight." Id. at 222, 242. The defense challenged Billy's
credibility by noting that when his statement was taken by
the police, he did not mention the gun being pointed at Tom.
Id. at 268.

c. The Importance of Tom's Testimony

The first factor in the analysis, the importance of Tom's statements, is illustrated by the fact that no other witness testified as to whether Tom was actually threatened, and no witness stated that the gun was ever loaded. The prosecution was required to prove that Wilkinson "demonstrated to Tom Wilkinson that the defendant intended to fire the gun at Tom Wilkinson." (Trial Tr. 84, Feb. 11, 2003). If Tom knew that the gun was not loaded when it was pointed at him, it is less likely there was a threat that Wilkinson intended to shoot him. Without Tom's statement that he thought Wilkinson was going to kill him, it is unclear whether there was ever a true threat. Id. at 23.

d. Cumulative or Corroborative Evidence

Tom's statements were not cumulative and not substantially corroborated because no other witness testified that there was an actual threat that Wilkinson would shoot Tom. The statement of "somebody's going to die tonight," partially corroborates a possible threat but on its own is too unclear to show that Tom's life was actually threatened.

21

e. Overall Strength of the Prosecution's Case

The issues discussed in the previous factors also speak to the relative weakness of the prosecution's case.  It is unclear the gun was ever loaded, Brittany did not see the gun pointed at Tom, Billy did not report to the police that the gun was pointed at Tom, and neither Brittany or Billy testified to a specific threat to Tom.

f. Extent of Cross-Examination Otherwise Permitted

The extent of cross-examination otherwise permitted here appears non-existent.  However, the Court notes that while Wilkinson could not cross-examine Tom, he was not precluded from attacking Tom's credibility.  Under Vt. R. Evid. 806, once Tom's out-of-court statements were admitted, his credibility could be attacked as if he were a witness.  This includes introducing any prior inconsistent statements and Tom's perjury conviction.  See Vt. R. Evid. 806, 609.  The State argues that Wilkinson deposed Tom and could have tried to introduce Tom's deposition statements to support his case, and therefore he had a full opportunity to attack Tom's credibility.  While Wilkinson did have some opportunity to attack Tom's credibility, the other factors, swung heavily by the importance of Tom's statements, are too

weighty to find the error was harmless.

III. Conclusion

For the reasons set forth above I recommend that the petition for Habeas Corpus be GRANTED.

Dated at Burlington, in the District of Vermont, this 18th day of July, 2008.


/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).